## A. B. SMITH LUMBER CO. *v.* J. J. ADAMS.

[56 South. 265.]

RECEIVERS. *Priority of claims. Advances.*

There was an attempt, which failed, to make a tripartite agreement whereby B was to manufacture lumber from timber cut on complainant's land and to sell to defendant at fixed prices. Complainant was to sell the timber for a certain amount to be advanced to B by defendant and on the failure of this agreement complainant agreed to pay B a fixed price for manufactured lumber, and later a quantity of lumber was sawed and stacked; during this time defendant made considerable advances on this lumber to B, which by agreement, between complainant and de-

fendant and B, were turned over to complainant; B also received some advances from complainant. *Held*, on suspension of operations and the appointment of a receiver to dispose of the lumber that defendant was entitled to a decree for the full amount of money expended by it with interest thereon.

APPEAL from the chancery court of Calhoun county.

HON. I. T. BLOUNT, Chancellor.

Bill by J. J. Adams against A. B. Smith Lumber Company. From a decree for complainant, defendant appeals.

The facts are as follows:

One J. J. Adams was the owner of a considerable tract of timber land in Calhoun county, Miss. On a tract adjoining Adams' land one Burgess operated a small sawmill, and desired to acquire timber from the Adams tract or the privilege of manufacturing it. Burgess began negotiations with one Lassiter, the representative of the A. B. Smith Company, which was a lumber concern of Paducah, Ky. Dealings then began between Burgess, Lassiter, and Adams, and an arrangement was agreed on by which Adams bound himself to sell to Burgess the timber for the price of two thousand and five hundred dollars, and Lassiter agreed that the A. B. Smith Lumber Company should advance this sum to Burgess, and that thereafter Burgess would manufacture the lumber which would be bought by the A. B. Smith Lumber Company at a certain fixed schedule of prices, varying with the grades and classifications and quantities of the lumber. This preliminary agreement was oral, and Lassiter left to submit same to his principals for approval. He returned with a written contract purporting to be between Burgess and the A. B. Smith Lumber Company, whereby the A. B. Smith Lumber Company agreed to buy all manufactured lumber sawed by Burgess at certain fixed schedule of mill yard prices; but he then refused to pay Adams the sum of two thousand five hundred dollars cash as purchase price of the timber on Burgess' account. At

this juncture the negotiations between the parties were suspended temporarily, Adams refusing to convey the timber unless paid the purchase money. Later, during the same visit of Lassiter to Calhoun county, and on the same or the following day, negotiations were renewed and a new arrangement projected, which contemplated that Burgess should be paid a fixed price for the manufacture of the lumber, and the sawing and stacking of same alongside the railroad track at Calhoun City, Miss., and the A. B. Smith Lumber Company would advance Burgess two thousand, five hundred dollars and that Adams should become surety on Burgess' note, so that the same might be repaid out of the receipts of lumber that Burgess would manufacture from the Adams tract. Lassiter again left with instructions from Adams to prepare this tripartite agreement, but later refused to sign it for the A. B. Smith Lumber Company, claiming that it was in violation of the original contract between Burgess and the A. B. Smith Lumber Company, but that he would be willing to advance for his principals the two thousand, five hundred dollars agreed upon. Thereupon a written contract was entered into between Adams and Burgess, by which Burgess was to receive the price of eleven dollars per thousand feet of the lumber he could manufacture, and saw and stack at Calhoun City, Miss. Later, at maturity of the two thousand, five hundred dollar note, same was repaid, with interest, to the A. B. Smith Lumber Company.

After the foregoing arrangement and advances had been made, Burgess began to cut and manufacture the Adams timber, and from time to time Lassiter would visit the mill and estimate the quantity of timber manufactured, classing it by grades and kinds, and advancing from time to time divers sums of moneys thereon. By agreement between Burgess, Adams, and Lassiter, these advances by the A. B. Smith Lumber Company, made payable to Burgess, were not delivered by him, but were immediately delivered to Adams with Burgess' written

instructions to the lumber company to deliver all checks and advances of money to Adams. Both Adams and the Smith Lumber Company made considerable advances against the lumber, which at the date of the institution of this litigation amounted to some two thousand, eight hundred dollars by the Smith Lumber Company, and some fourteen hundred dollars by J.J. Adams, the owner. A quantity of lumber approximating some two hundred thousand feet had been sawed and stacked, when the A. B. Smith Lumber Company refused to make any further advances, and refused to recognize any rights of Adams for the advances made by him in defraying various expenses of manufacturing, sawing, etc. Adams refused to make any further advances and the manufacture of timber from his tract was suspended by Burgess.

Thereupon Adams filed this bill in the chancery court of Calhoun county reciting the above stated facts, averring that the Smith Lumber Company had made advances against the lumber; that he, an owner, had made advances against this; that the lumber was depreciating; that the Smith Lumber Company was claiming to be the owner of all the lumber, refusing to recognize any right of complainant, and prayed a receiver for the preservation and disposition of the property, and for other equitable relief. At the hearing the chancellor decreed that the A. B. Smith Lumber Company and J. J. Adams, the complainant, each had made considerable advances in the manufacturing, sawing, and storing of the timber; that as the original contract and agreement had failed that the equities of both ought to be recognized, and same were equal, and he established the debts, and provided that the property should be sold by the receiver, and the receipts ratably divided between the A. B. Smith Lumber Company and J. J. Adams, the complainant, in proportion to their claims against them, respectively. From this decree the Smith Lumber Company prosecute their appeal.

*W. J. Lamb* and *Ross & Ross,* for appellant.

Under the state of facts presented in this record we desire to present to the court some authorities in support of our contention upon the question of estoppel. This question has been so often before the courts, and seems to be so well settled, not only in the state of Mississippi, but other states as well, that it may appear presumptuous on our part to present any authorities on the proposition; however, we call the court's attention to some of the authorities upon the question, as:

Where one by his words or conduct willfully causes another to believe the existence of a certain state of things and thereby induces him to act on that belief so as to alter his condition, the former is precluded from averring against the latter a state of things different from that represented. *Tobin* v. *Allen,* 53 Miss. 563. Again,

The principle on which the doctrine of estoppel rests, is that it would be a fraud for one to assert what his previous conduct has denied when on the faith of that denial others have acted. *Staten* v. *Bryant,* 55 Miss. 261. Again,

In the same case it arises from an act or declaration intended or calculated to mislead another, and on which that other has relied and has so acted or refrained from action as that injury will befall him if the truth of the action or declaration is denied. *Staten* v. *Bryant,* 55 Miss. 261.

Considerable testimony was offered by Mr. Adams as to what he said prior to the time the contract was made and after its execution about what Burgess was to do about his rights in the matter. This testimony was excepted to by appellant, and in some instances sustained and others exceptions were overruled. None of that evidence was competent, as held by the supreme court in this state in numerous cases. It is said by the court:

Parol evidence of the oral altercations, propositions, offers, and conversations between the parties pending the negotiation of a contract is made inadmissible where the contract is reduced to writing. They are merged in the writing which becomes the sole exponent of the terms of the contract. *Herndon* v. *Henderson,* 41 Miss. 584; *Cocke* v. *Bailey,* 42 Miss. 81; *Kerr* v. *Kuykendall,* 44 Miss. 137; *Wren* v. *Hoffman,* 41 Miss. 618. Again,

All written contracts when entered into in such form as to import a legal obligation are conclusively presumed to express the whole engagement of the parties, all oral declarations and whether contemporaneous, prior or subsequent thereto, contradicting or varying the terms of the contract, are rejected. *Houck* v. *Wright,* 23 So. Rep. 422 (Miss. Sup. Ct., Apr. 25, 1898). The principle is elementary. A party, who by his acts, declarations or admissions, by failure to act or speak under circumstances where he should do so either designedly or with willful disregard of the interests of others induces or misleds another in to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his rights to the detriment of the person so misled. That would be a fraud. *Greer* v. *Mitchell,* 26 S. E. 302 (42 W. Va. 494).

If one person is induced to do an act prejudicial to himself in consquence of the acts or declarations of another on which he had a right to rely, equity will enjoin the latter from asserting his legal rights against the tenor of such acts or declarations. *Branson* v. *Wirth,* 17 Wall. 32 (21 L. Ed. 566). Again,

He, who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. *Dickerson* v. *Golgrove,* 100 U. S. 578 (25 L. Ed. 618).

Where a person tacitly encourages an act to be done he cannot exercise his legal right in opposition to such consent if his conduct induced the other party to change his position so that he will be peculiarly prejudiced. *Sevain v. Eeaman,* 9 Wall. 254 (19 L. Ed. 554).

J. F. Lassiter testifies that complainant claimed at the time the contract was made that two thousand dollars was all he had against the timber, and that in view of that, and upon the advance of the two thousand dollars the contract was made; that otherwise he would not have gone into the matter and advanced the money, or afterwards, as the agent of appellant (and appellant testifies to the same effect), he would not have advanced the seventy-five per cent of the value of the lumber if it had been known that appellee was making any further claim or had any further rights, hence,

Where the owner stands by and declares that he has no claim, equity will not permit him afterwards to assert his title to the injury of the person he has misled. *Morgan v. Chicago & A. R. R. Co.,* 96 U. S. (24 L. Ed. 743).

Where one having title to property stands by and sees in silence a purchaser expend money therefor under the erroneous impression that he is acquiring a good title thereto, he will not be allowed afterwards to set up his title against the purchaser. *Irwin v. Lowery,* 7 How. 172; *Krik v. Hamilton,* 102 U. S. 68; *Close v. Glenwood,* 107 U. S. 466. Again, where one, who by his acts or representations or by his silence when he ought to speak out, intentionally, or through culpable negligence, iduces another to believe certain facts to exist and the latter rightfully acts on such belief so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. *Given v. Times Printing Co.,* 114 Fed. 92; *Linton v. National Life Ins. Co.,* 104 Fed 584; *American Gas Co. v. Wood,* 38 Am. Rep. 548;

*Western Land Association* v. *Banks,* 83 N. W. 192; *Lydick* v. *Gill,* 94 N. W. 109; *Atkins* v. *Schoeder,* 103 N. W. 1072; *Lawson* v. *Anderson,* 104 N. W. 925; *Bates* v. *Seviger,* 4 W. Va. 420; *Wright* v. *McCord,* 39 S. E. 925, 121 Ga. 216; *Amyx* v. *Hurt,* 68 S. W. 420, 24 Ky. 291.

Where, by acquiescence or consent of the real owner the appparent title to immovable property is vested in another, such real owner can claim nothing to the prejudice of innocent third persons who have acquired rights with respect to such property on faith of such apparent title. *Getman* v. *Harrison,* 30 So. 486, 112 La. 435; *Estey* v. *Cummings,* 83 N. W. 420.

Where a party has once recognized the existence and validity of a contract he cannot subsequently set up a technicality and seek to avoid its binding effect. *Ean Claum Co.* v. *Western Brokerage Co.,* 115 Ill. App. 71.

Where the owner of land stands by and sees another sell it or the mineral therein and says nothing, and especially when he received a part or all of the purchase money, he will be estopped to thereafter claim the property. *Manning* v. *Kansas, etc. Co.,* 81 S. W. 140, 181 Mo. 359. Again,

A party who has taken one position by which he has benefited at the expense of another is estopped from repudiating that and taking another inconsistent position to the prejudice of that other. *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. Ed. 187.

Under the facts and under the law we insist that not only is the complainant estopped from asserting that he has any prior rights to the lumber or its proceeds as against the appellant, but that his acts and conduct are fraudulent to such an extent that he can have no standing in a court of equity; that he does not present himself with clean hands and should be repelled, that when he comes into a court of equity seeking equity, as he says in this case, and attempts to protect what he alleges are his equitable rights, he is bound to do equity himself, and

that it would be most in equitable and unconscionable to say that he could deprive the appellant of the very property upon which he was instrumental in procuring appellant to expend large sums of money in its expected purchase when appellant was acting under the honest belief that he was to obtain that very property.

We insist that appellant was entitled to the whole of the lumber in controversy, that upon the grade of the same and the balance due therefor being ascertained, appellant was then entitled to take the lumber, but that now as appellee has deprived him of that right by the suit, that appellant should be decreed the full amount expended by him, with interest thereon, and such damages as could be awarded under the facts by reason of the attachment and receivership.

We insist that the decree of the chancellor was erroneous, and in fact we cannot see upon what the chancellor could have based his decree in this case. There was no ground upon which an apportionment of the proceeds of the lumber could be based. Pleadings did not justify such a decree, and it is unwarranted under the facts.

We earnestly but respectfully insist that his honor's decree was erroneous, that the same should be reversed, and that the appellant should have the relief above stated.

*Mayes & Longstreet,* for appellee.

The main proposition relied on by complainant and his counsel, is that Mr. Adams should be held to be estopped from asserting any claim to, interest in, or charge on, the lumber. Why should this be so? A. B. Smith Lumber Company contracted with Burgess, the vendee of Adams, with knowledge and notice of the rights of the latter. Adams was the owner of the timber, and held a paramount lien and claim on the entire product for the purchase money. This purchase money was originally fixed at two thousand dollars; but even under the con-

tract with Burgess, the amount of five dollars per thousand of the proceeds of the lumber was to be retained by him as a credit on the purchase money. As a matter of fact, none of the money advanced by the Smith Lumber Company went to the reimbursement of Adams, or payment of the purchase money. It appears in the evidence, without contradiction, that the advances of two thousand, eight hundred and sixty-nine dollars made by the Smith Lumber Company was expended for the manufacture of the lumber, and in payment of the necessary operating expenses. Whenever the Smith Lumber Company failed to advance enough money to cover these expenses, then, in order to the preservation of the property, the sawing of logs and the manufacture of lumber, it was essential that some one should make advance, and Adams did so in payment of labor accounts to the extent of twelve hundred fifty dollars. It was manifestly proper that he should have a claim on the lumber for his purchase money and these advances. He could not be estopped in claiming an interest against the lumber, because he was not bound by the contract with Smith; he was not a signer of that contract, though he was willing to abide it. All that the Smith Lumber Company can ask is that they shall have the manufactured lumber at the prices fixed in their contract with Burgess, and according to the grades and classifications in said contract set forth.

But Smith Lumber Company is in no position to invoke the doctrine of estoppel against anybody. Smith has not complied with his contract in anywise. The court will bear in mind that the timber on the land has only been partially cut and manufactured under this contract. But Smith Lumber Company has not even accepted and shipped the two hundred thousand feet which were delivered on the right of way, subject to acceptance and shipment. They have confessedly advanced only seventy-five per cent of the estimated mill yard value of this lumber; they have not paid the full f. o. b. value, nor do they pretend

to have done so.  The Smith Lumber Company occupies in this litigation the position of one who has repudiated and abandoned his contract.

There is no effort by the answer to secure a specific performance of this contract against Burgess or against Adams.  At the time of the filing of the bill of complaint the two hundred thousand feet of lumber were still standing on the right of way, exposed to the weather, and other dangers, and deteriorating in value.

Respondent does not even offer, in his answer, to take up and accept the lumber, and pay for it according to the terms of the contract with Burgess.

There is in his testimony a statement that he would be willing to take it.  But the answer is not made a cross-bill, praying affirmative relief, and seeking the enforcement of his contract.  If the doctrine of estoppel operates in this case at all, it is in full force against the Smith Lumber Company.  Confessedly that company has not complied with its contract, and does not, in this litigation attempt to enforce it.  They are claiming, virtually, to own the entire quantity of lumber, to have the legal title to it.  They seem to think that they have the right to claim ten per cent of lumber for the seventy-five per cent of mill yard value advanced.

This change of position on the part of the Smith Lumber Company and the total failure to ask specific performance, is very striking.  Of course, the chancellor was bound to decide the case before him, as presented by the pleadings and the evidence.  And this case was one where all parties in interest apparently were seeking to hold a quantity of lumber subject to all their charges; except that the Smith Lumber Company is doing the singular thing of claiming to be the legal owner of the entire lot of lumber, and this theory cannot be sustained, in any view of the contract, or of any evidence that might be offered in support of it.

The case presented to the chancellor on the pleadings and evidence, was one where the certain quantity of lumber of unfixed value had been produced out of the timber of the owner, and at the joint manufacturing and operating expense of the owner and the contractee of the vendee.

These advances having been clearly established, and the money representing purchase money and operating expenses, the chancellor could only adjudicate according to the equities of the parties, and he had practically made provision for equal protection to both so far as the lumber may suffice to pay both. It may be, however, that since the Smith Lumber Company has abandoned the contract, they may refuse to pay the favorable prices according to the schedule, and the lumber will be forced to sale in the hands of a receiver, and realize only such prices as many be secured by an official sale.

The Smith Lumber Company does not appear to recognize any rights and equities of Mr. Adams, but contends that he should lose all of his timber and his money besides.

As a matter of fact, on the state of the record here presented, we contend that the chancellor would have been justified by law in declaring the rights of the Smith Lumber Company were entirely subordinated to the liens and rights of Mr. Adams; and that until the Smith Lumber Company should take up and pay for the lumber according to the terms of their contract, they would not be held to assert any claim in and to it.

However, according to the equities of the parties, the chancellor's decree manifestly concedes to the Smith Lumber Company just as much recognition and protection as is afforded to the owner of the timber, and the man who, by supplying the timber, and by devoting his personal time and attention to it, by handling the funds, and supervising the manufacture, paying the pay-rolls, and making advances for operating expenses, has done

more than any other person to make the performance of Burgess' contract with the Smith Lumber Company possible.

Argued orally by *E. W. Ross* and *W. J. Lamb*, for appellant, and *J. C. Longstreet*, for appellee.

WHITFIELD, C.

After the most careful consideration, we are thorougly satisfied that the decree of the learned chancellor is manifestly wrong on the facts. The appellant was clearly entitled to a decree for the full amount of money expended by it, with interest thereon.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein set out the decree is reversed and the cause remanded, to be proceeded with in accordance with this opinion.